# United States Court of Appeals for the Federal Circuit

---

**IN RE:  MONOLITHIC POWER SYSTEMS, INC.,**
*Petitioner*

---

2022-153

---

On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in No. 6:21-cv-00655-ADA, Judge Alan D. Albright.

---

**ON PETITION**

---

DEANNE MAYNARD, Morrison & Foerster LLP, Washington, DC, for petitioner.  Also represented by SETH W. LLOYD; WEIZHI STELLA MAO, BRYAN J. WILSON, Palo Alto, CA; DIEK VAN NORT, San Francisco, CA.

CHRISTOPHER FERENC, Katten Muchin Rosenman LLP, Washington, DC, for respondent Bel Power Solutions Inc. Also represented by ANDREW JOHN PECORARO, ROBERT THOMAS SMITH; BRIAN SODIKOFF, Chicago, IL.

---

Before LOURIE, CHEN, and STARK, *Circuit Judges*.

Opinion for the court filed PER CURIAM.

Dissenting opinion filed by *Circuit Judge* LOURIE.

PER CURIAM.

## O R D E R

Monolithic Power Systems, Inc. petitions for a writ of mandamus directing the United States District Court for the Western District of Texas to dismiss or transfer this case to the United States District Court for the Northern District of California. Bel Power Solutions Inc. opposes. For the following reasons, we *deny* the petition.

I.

Bel Power brought this suit alleging that Monolithic infringes Bel Power's patents by selling certain power modules to original equipment manufacturers (OEMs) and other distributors and customers that use the products in their own electronic devices. Monolithic moved to dismiss or transfer for lack of venue under 28 U.S.C. § 1406(a) and Federal Rule of Civil Procedure 12(b)(3), arguing that, as a Delaware corporation, it does not "reside" in the Western District within the meaning of 28 U.S.C. § 1400(b); that it does not own or lease any property in that district; and that the homes of four fulltime remote employees in the Western District identified in the complaint to support venue do not constitute a "regular and established place of business" of Monolithic. Monolithic alternatively moved to transfer under 28 U.S.C. § 1404(a) to the Northern District of California.

The district court denied both requests. The court first rejected Monolithic's improper venue challenge, finding Monolithic viewed maintaining a business presence in the Western District as important, as evidenced by a history of soliciting employment in Austin to support local OEM customers, even if none of its Western District employees were required to reside there. The court also found significant that Monolithic provided certain employees in the Western District with lab equipment or products to be used in or distributed from their homes as part of their responsibilities. Based on those findings, the court concluded that the circumstances      surrounding      venue      here      were

distinguishable from *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017), and more similar to circumstances that another district court in *RegenLab USA LLC v. Estar Technologies Ltd.*, 335 F. Supp. 3d 526 (S.D.N.Y. 2018), found sufficient to support venue.

Having concluded that venue over Monolithic in the Western District was proper, the court then analyzed whether the convenience of parties and witnesses and the interests of justice weighed in favor of transfer, following the multi-factor approach adopted by the United States Court of Appeals for the Fifth Circuit in *In re Volkswagen of America, Inc.*, 545 F.3d 304, 310 (5th Cir. 2008) (en banc). After considering those factors, the court determined that Monolithic had failed to demonstrate that the Northern District of California was clearly more convenient than the Western District and thus denied transfer.

Monolithic then filed this petition challenging the court's determination that the Western District is a proper venue under § 1400(b) based on its employees' homes. Monolithic also contends that the district court clearly abused its discretion in its assessment of the relevant transfer factors under § 1404(a). We have jurisdiction under 28 U.S.C. §§ 1651(a) and 1295(a)(1).

## II.

Under the All Writs Act, federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Before a court may issue the writ, three conditions must be satisfied: (1) the petitioner must have "no other adequate means to attain the relief he desires"; (2) the petitioner must show that the right to the writ is "clear and indisputable"; and (3) the court "in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380–81 (2004) (citations and

internal quotation marks omitted).  Monolithic has not met these requirements with respect to either of its challenges.

A

As to the district court's refusal to dismiss or transfer for improper patent venue, "[o]rdinarily, mandamus relief is not available for rulings on [improper venue] motions under 28 U.S.C. § 1406(a)" because post-judgment appeal is often an adequate alternative means for attaining relief. *In re Volkswagen Grp. of Am., Inc.*, 28 F.4th 1203, 1207 (Fed. Cir. 2022) (citing *In re HTC Corp.*, 889 F.3d 1349, 1352–53 (Fed. Cir. 2018)).  We have found mandamus to be available for alleged § 1400(b) violations where immediate intervention is necessary to assure proper judicial administration.  *See, e.g., In re ZTE (USA) Inc.*, 890 F.3d 1008, 1011 (Fed. Cir. 2018); *In re BigCommerce, Inc.*, 890 F.3d 978, 981 (Fed. Cir. 2018); *In re Micron Tech., Inc.*, 875 F.3d 1091, 1095 (Fed. Cir. 2017); *Cray*, 871 F.3d at 1360.  But Monolithic has not shown that mandamus is necessary for this purpose here.

We are not persuaded that the district court's venue ruling implicates a "basic, unsettled, recurring legal issue[] over which there is considerable litigation producing disparate results," or similar circumstances that might warrant mandamus.  *Micron*, 875 F.3d at 1095.  The court analyzed Monolithic's arguments under the factors established in *Cray* for determining whether, for purposes of venue, a defendant has sufficiently ratified a place of business to make it its own.  And it did so based on the specific circumstances surrounding Monolithic's history of soliciting employees to work in the Western District to support Monolithic's local OEM customers in that district and the extent and type of laboratory equipment and product maintained in the homes of those employees.

Among other things, the court noted that one employee, Jason Bone, "possesses a fair amount of Monolithic's equipment, including two oscilloscopes, four to five power

supplies, two electric loads, a logic analyzer, a soldering iron, a multimeter, a function generator, three to five samples of microcontrollers, MOSFETs, five op-amps, ten to fifteen comparators, twenty inductors, and fifty sample demonstration boards." Appx6. And Monolithic provided that equipment, "which is not typically found in a generic home office," for "the sole purpose of allowing Mr. Bone to conduct testing and validation as part of his job." *Id.* Specifically, Mr. Bone uses these in-home tools and equipment to conduct validation tests for at least one of Monolithic's in-district customers. *See* Appx734 (cited by Pet. at 15); *cf. In re Cordis Corp.*, 769 F.2d 733, 735, 737 (Fed. Cir. 1985) (finding venue proper in district where defendant's employees stored defendant's "literature, documents and products" in their in-district homes rather than in a separately leased or owned warehouse of the defendant); *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F. 4th 1111, 1124 (Fed. Cir. 2021) (finding venue improper where defendant's employees chose to rent storage lockers to store defendant's product samples with no evidence that defendant "established or ratified" said lockers).[1] In this case, there is some "evidence that the employees' location" in the district "was material to" Monolithic. *Cf. Cray*, 871 F.3d at 1365.

The dissent may well be correct that the issue of imputing employee homes to a defendant for purposes of venue will become an issue of greater concern given the shift to

---

[1]    Monolithic emphasizes the lack of evidence that its four employees in the Western District of Texas work with the products accused of infringement in this case. *See, e.g.*, Pet. Br. at 14–16; Pet. Reply. at 2–5. We have held, however, that § 1400(b) does not require a causal relationship between a defendant's regular and established place of business and the acts of infringement. *See In re Google*, No. 2018-152, 2018 WL 5536478, at *3 (Fed. Cir. Oct. 29, 2018).

remote work. But, in our view, at present, the district court's ruling does not involve the type of broad, fundamental, and recurring legal question or usurpation of judicial power that might warrant immediate mandamus review. As we have stated: "Not all circumstances in which a defendant will be forced to undergo the cost of discovery and trial warrant mandamus[ because t]o issue a writ solely for those reasons would clearly undermine the rare nature of its form of relief and make a large class of interlocutory orders routinely reviewable." *In re BP Lubricants USA Inc.*, 637 F.3d 1307, 1313 (Fed. Cir. 2011); *cf. La Buy v. Howes Leather Co.*, 352 U.S. 249, 259 (1957) (explaining that "trial before a regular, experienced trial judge rather than before a temporary substitute appointed on an ad hoc basis and ordinarily not experienced in judicial work" was an example of "impelling reason for" mandamus relief). As is evident from other venue cases, the nature of the work that employees perform from their homes on behalf of their employers is varied. And given the nature of Mr. Bone's work in particular, it appears that this case may present an idiosyncratic set of facts. For us to be regularly drawn into such fact-laden disputes, presented at the outset of a case, often before much can be reasonably predicted about how a case will proceed and whether trial is a reasonable prospect, would be inconsistent with the limited nature of the writ of mandamus. *See generally Cray*, 871 F.3d at 1362 ("In deciding whether a defendant has a regular and established place of business in a district, no precise rule has been laid down and each case depends on its own facts."); *id.* at 1366 ("We stress that no one fact is controlling."). Thus, we conclude that Monolithic has not demonstrated the type of concerns that we have relied on when granting immediate mandamus review. *Compare In re Google LLC*, No. 2018-152, 2018 WL 5536478, at \*2–\*3 (Fed. Cir. Oct. 29, 2018) (denying mandamus for a venue challenge to allow the issue to percolate in the district courts so as to more clearly define the importance, scope, and nature of the issues for us to review), *with In re Google LLC*, 949 F.3d

1338, 1342–43 (Fed. Cir. 2020) (granting mandamus for a similar challenge after a "significant number of district court decisions that adopt[ed] conflicting views" "crystallized and brought clarity to the issues").

We conclude that Monolithic has not shown a clear and indisputable right to mandamus relief on its improper venue challenge, so we do not reach the merits of that challenge. Thus, our conclusion should necessarily not be interpreted as a disagreement with the dissent's analysis of the ultimate merits of the venue issue.

B

Monolithic also challenges the district court's decision to deny transfer under § 1404(a), which we review under regional-circuit law. *See In re Samsung Elecs. Co.*, 2 F.4th 1371, 1375 (Fed. Cir. 2021). Our task on mandamus is limited to seeing if there was such a clear abuse of discretion that refusing transfer amounted to a patently erroneous result. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). We cannot say that such a clear abuse of discretion occurred here. The district court reviewed and weighed all of the relevant factors. The court found, among other things, that the locus of events giving rise to this suit largely took place outside of the transferee venue and that the Texas forum, where several of Monolithic's customers are located, could more easily access relevant information pertaining to induced and contributory infringement and could compel several potential third-party witnesses. The court weighed these and other administrative factors against two willing witnesses within the transferee forum favoring transfer and determined that Monolithic had not demonstrated that the transferee form was clearly more convenient. This is not a case in which there is "only one correct outcome." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344, 1347 (Fed. Cir. 2010). Mindful of the standard of review, we are not prepared to say Monolithic has shown a

clear right to disturb those findings under the circumstances of this case.

Accordingly,

IT IS ORDERED THAT:

The petition is denied.

FOR THE COURT

September 30, 2022                    /s/ Peter R. Marksteiner
         Date                        Peter R. Marksteiner
                                     Clerk of Court

# United States Court of Appeals
# for the Federal Circuit

---

**IN RE:  MONOLITHIC POWER SYSTEMS, INC.,**
*Petitioner*

---

2022-153

---

On Petition for Writ of Mandamus to the United States District Court for the Western District of Texas in No. 6:21-cv-00655-ADA, Judge Alan D. Albright.

---

LOURIE, *Circuit Judge*, dissenting.

I respectfully dissent from the majority's decision to deny mandamus.  In my view, it is clear that venue is improper in the Western District of Texas because Monolithic Power Systems, Inc. does not "reside[]" there and the homes of Monolithic's four employees in the Western District do not constitute Monolithic's "regular and established place of business."  28 U.S.C. § 1400(b).  Indeed, we held venue to be improper under materially similar circumstances in *In re Cray Inc.*, 871 F.3d 1355 (Fed. Cir. 2017) and *Celgene Corp. v. Mylan Pharms. Inc.*, 17 F.4th 1111 (Fed. Cir. 2021).  As in those cases, the facts here "merely show that there exists within the district a physical location where . . . employee[s] of the defendant carr[y] on certain work for [their] employer," which is insufficient under § 1400(b).  *Cray*, 871 F.3d at 1366.

Most basically, Monolithic lacks a regular and established place of business in the Western District of Texas, as the statute requires in order for it to be sued there.  All else

in this case relates to the not-infrequent attempt to skirt around the statute to sue out-of-state defendants. And, in my view, we should not stand back and let the requirements of the statute be eroded by the details of what an employee stores in his or her home, even if the legal issue on appeal relates to the demanding requirements of mandamus. Reviewability on appeal does not provide adequate remedy for mistaken denials of mandamus, as the judicial system should not be stressed by having cases tried in venues not permitted by statute, and then retried as they should have been in a proper venue. Finally, our mention of "ratification" in *Cray* of an employee's home as a defendant's regular and established place of business, in the interest of completeness, was not meant to be a leaky sieve to accommodate avoidance of the basic requirements of the statute.

Regarding specifics, which of course are what any case rests on, Monolithic does not own, lease, or exercise control over any portion of the homes of the employees; does not require these four employees to (continue to) reside in the Western District of Texas as a condition of their employment; and does not list or advertise their homes as places of business. For those reasons, we held that the defendants in *Cray* and *Celgene* did not "establish or ratify" the in-district homes of their employees as defendants' place of business. *Celgene*, 17 F.4th at 1122 (quoting *Cray*, 871 F.3d at 1363). The fact that the defendants in *Celgene* posted ads asking job candidates to live in, or within reasonable driving distance of, the district and that some employees rented lockers to store product samples in the district were insufficient to establish venue. 17 F.4th at 1123–24.

The circumstances of job advertisement and storage of product and equipment relied on by the district court for finding venue here are not meaningfully distinguishable from those in *Celgene*. In *Celgene*, we found significant that there was "no requirement [that the employee] actually live in" the district and no "restriction on moving out

of state once there." *Id*. at 1123. The same is true in this case. *Celgene* also rejected relying on the storage of product samples where there was "no evidence that [either defendant] requires its employees to store materials anywhere in" the district, no evidence that storing the product was "anything but the employees' choice," and no evidence that the defendant controlled or possessed where and how the product was stored. *Id*. at 1124. The reasons for finding venue to be improper in *Celgene* apply equally here, even though this case also involves laboratory equipment. As with the defendants in *Celgene*, there is no evidence that Monolithic requires Mr. Bone or other employees to maintain equipment at their houses in the Western District of Texas.

The district court further erred by not considering "the nature and activity of the alleged place of business of the defendant in the district *in comparison with* that of other places of business of the defendant in other venues." *Cray*, 871 F.3d at 1364. In contrast to the handful of employees in the Western District of Texas at issue here who work from home, Monolithic maintains three regional headquarters in other venues. Pet. at 16 (citing Appx693). This clearly does not reflect "a business model" of using employees' homes as a place of business that we indicated in *Cray*, 871 F.3d at 1364 n.*, might support venue.

I appreciate the majority's concern over addressing this issue on mandamus, given Monolithic's ability to reraise its challenge after final judgment. However, consistent with the use of mandamus to ensure "proper judicial administration," *La Buy v. Howes Leather Co.*, 352 U.S. 249, 259–60 (1957); *In re Micron Tech., Inc.*, 875 F.3d 1091 (Fed. Cir. 2017), I believe the majority here erred in finding that immediate review is unwarranted. The district court's erroneous ruling threatens to bring confusion to the law relating to where a patent infringement suit can properly be brought based on the location of employee homes and to erode the clear statutory requirement of a regular and established place of business. Given the increased

prevalence of remote work, I think immediate review by way of mandamus would be important to maintain uniformity of the court's clear precedent.

For those reasons, I respectfully dissent.